# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| LINDA L., | Case No. CV 18-01817-DFM |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security, | |
| Defendant. | |

Linda L. ("Plaintiff") appeals the Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB").[1] The Commissioner's decision is reversed and this case is remanded.

## I.   BACKGROUND

In 2014, Plaintiff filed an application for DIB alleging disability beginning on December 26, 2013. See Dkt. 16, Administrative Record ("AR") 107, 122, 201-02. After her application was denied initially and on

---

[1] The Court partially redacts the name of Plaintiff and her husband in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). See AR 121, 136, 153-54. A hearing was held on July 5, 2016, at which the ALJ heard testimony from Plaintiff, who was not represented by counsel, and her husband, David. See AR 80-106. On December 23, 2016, the ALJ issued an unfavorable decision. See AR 18-30.

In his decision, the ALJ determined that Plaintiff had the following impairments, considered "severe" in combination: disc protrusion at L5-S1 and postpartum depression. See AR 23-24. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently; sit and stand/walk for 6 hours each in an 8-hour day; frequently climb, balance, bend, stoop, and crawl; never climb ropes, ladders, or scaffolds; perform a full range of simple repetitive work; perform work at a reasoning level of 7; frequently perform complex technical work; frequently exercise "concentration and persistence in pace"; frequently have contact with coworkers and the general public; and perform work at stress level 5, on a scale of one to ten. See AR 24. Based on the responses of a vocational expert ("VE") to written interrogatories, the ALJ determined that Plaintiff could perform her past relevant work as a salesperson and teacher's aide. See AR 28. In light of Plaintiff's self-representation, the ALJ also "determine[d] her disability status assuming, for the sake of argument, that her mental limitations limit her to performing no more than unskilled tasks." AR 29. The ALJ thus asked the VE whether jobs existed in the national economy for an individual of Plaintiff's age, education, work experience, and RFC who was limited to unskilled work. See id. Based on the VE's responses, the ALJ determined that Plaintiff could work as a furniture cleaner, machine feeder, and laundry worker. See AR 29-30. He therefore found Plaintiff not disabled. See AR 30.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-4. This action followed. See Dkt. 1.

## II.   DISCUSSION

The parties dispute whether the ALJ: (1) properly determined the RFC, (2) permissibly discounted Plaintiff's subjective symptom testimony, and (3) properly evaluated statements from Plaintiff's husband. See Dkt. 17, Joint Stipulation ("JS") at 3.

### A.   Plaintiff's RFC

Plaintiff argues that the ALJ erred in formulating the RFC by failing to give proper weight to evidence from various medical doctors about her limitations. See JS at 3-14.[2]

---

[2] After the ALJ's decision, Plaintiff submitted to the Appeals Council additional medical records from 2014 through 2016. See AR 49-79, 333. In denying Plaintiff's request for review, the Appeals Council found that the evidence did not "show a reasonable probability that it would change the outcome of the decision" and therefore "did not consider and exhibit this evidence." AR 2. Plaintiff argues that the Appeals Council should have remanded the case to the ALJ. See JS at 14.

This Court lacks jurisdiction to "review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." Brewes v. Comm'r of SSA, 682 F.3d 1157, 1161 (9th Cir. 2012). To the extent that Plaintiff argues that the Court must review the newly submitted evidence, the Commissioner concedes that these medical records are now part of the administrative record. See JS at 12-13 (citing Brewes, 682 F.3d at 1163 ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.")). The Court has therefore considered these records, notwithstanding the Appeals Council's ambiguous statement about how it treated this evidence. See AR 2.

### 1. Applicable Law

A claimant's RFC is the most a claimant can still do despite her limitations. <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ will assess a claimant's RFC based on all the relevant evidence of record and will consider all of the claimant's medically determinable impairments, whether found to be severe or not. <u>See</u> 20 C.F.R. § 404.1545(a)(1)-(2), (e).[3]

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. <u>See</u> <u>id.</u> § 404.1527(d)(2). However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. <u>See</u> <u>id.</u> § 404.1545. A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial

Plaintiff also contends that the ALJ prejudiced Plaintiff by failing to develop the record with respect to her mental health treatment, relying on an apparent gap in treatment records between November 2014 and June 2016 to discount medical opinions regarding Plaintiff's mental impairment. <u>See</u> JS at 5-7. Plaintiff argues that a form dated May 28, 2015, reflected "current treatment" by two mental health professionals and thus triggered the ALJ's duty to further develop the record. <u>See</u> JS at 5. Because this case is remanded on other grounds, the Court declines to address this issue and instructs the ALJ on remand to consider the records Plaintiff submitted to the Appeals Council. <u>See</u> Section II.B and II.C <u>infra</u>; <u>see also</u> <u>Crawford v. Colvin</u>, No. 15-1436, 2016 WL 1237342, at *8 (C.D. Cal. Mar. 28, 2016); <u>Morganti v. Colvin</u>, No. 12-3511, 2013 WL 1758784, at *10 (N.D. Cal. Apr. 24, 2013).

[3] Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. <u>See</u> <u>Lowry v. Astrue</u>, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); <u>Garrett ex rel. Moore v. Barnhart</u>, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, throughout this decision the Court cites the Social Security Regulations that were in effect at the time of the ALJ's December 2016 decision.

evidence in the record as a whole supports the decision. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

**2.** **Physical Limitations**

a. Background

Most of the evidence concerning Plaintiff's back impairment predates the relevant period. Dr. William Costigan, who treated Plaintiff from September 2011 to October 2012, intermittently restricted Plaintiff from working due to severe low back pain. See AR 336-42. Dr. Costigan noted decreased spinal range of motion with pain, decreased sensation, and several positive straight leg raising, cram, Lasegue, sciatic notch, and paraspinal spasm tests. See AR 336-41. Dr. Costigan prescribed anti-inflammatory medication, a spinal injection, and physical therapy, and noted that treatment options were limited due to Plaintiff's pregnancies. See AR 336-42. An MRI from October 2012 showed mild lumbar scoliosis and a small 2.5 mm left posterolateral disc protrusion without canal or foraminal compromise. See AR 343.

During the relevant period, Plaintiff reported "backaches" in addition to mental health symptoms at a June 2014 postpartum visit with her obstetrician. AR 347. In November 2014, when Plaintiff was involuntarily hospitalized for psychiatric treatment, she reported chronic back pain. See AR 418. Records from Northeast Community Clinic show that Plaintiff sought emergency treatment for back pain in April 2016. See AR 55.

On August 24, 2014, Dr. Jared Niska performed an orthopedic consultative examination. See AR 377-82. Dr. Niska found that Plaintiff had normal gait, could squat, toe walk, and heel walk, could sit in a chair comfortably without tilt, and could rise from sitting and supine positions without difficulty. See AR 380. Straight leg raising tests were negative bilaterally, both seated and supine, and there was no obvious spasm, although Plaintiff was minimally tender in the lower back musculature, exhibited

decreased range of motion with pain at the extremes, and had equivocal Babinski signs. See id. Dr. Niska assessed normal motor strength in all extremities, intact sensation, and normal deep tendon reflexes and pulses. See AR 382. Dr. Niska opined that Plaintiff could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently, could stand/walk for 6 hours and sit for 8 hours in an 8-hour work day, and could frequently bend, crouch, kneel, crawl, stoop, climb, balance, walk on uneven terrain, and work at heights, with no overhead restrictions. See AR 381.

In September 2014, a State agency reviewing physician opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently and was not otherwise limited in her ability to push and pull, could sit and stand/walk for 6 hours each in an 8-hour workday, and could frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. See AR 114-15. A second State agency reviewing physician affirmed these findings in November 2014. See AR 129-30.

In assessing Plaintiff's physical limitations, the ALJ noted that Plaintiff's MRI and "all of [her] directly related medical treatment occurred prior to 2013, well before" the alleged onset date, and that after the alleged onset date, there was no evidence of "motor, sensory, reflex loss, positive straight leg raising tests, spasm, or other signs of nerve root or spinal cord involvement," nor of gait or ambulation difficulties. AR 25. The ALJ observed that Dr. Niska and the State agency reviewing physicians found that Plaintiff could perform "a full range of medium exertion, essentially," and found the medical record, which contained "only a single and isolated report of 'backache' at times material hereto," consistent with their findings. Id. (citing AR 347).

b.  Analysis

Substantial evidence supports the ALJ's findings regarding Plaintiff's physical limitations. Dr. Niska's examination, which found negative straight

leg raising tests, lack of difficulty with sitting and standing, and normal gait, motor strength, sensation, and reflexes, is consistent with the ALJ's finding that the medical evidence during the relevant period was unremarkable. See AR 25, 380, 382. The ALJ's RFC included the limitations assessed by Dr. Niska and adopted by the reviewing physicians. See AR 24, 114-15, 129-30, 381. Moreover, no doctor assessed greater physical limitations during the relevant period.

Although Plaintiff contends that the RFC conflicts with the medical evidence concerning her back impairment, virtually all of the evidence she cites, including Costigan's treatment notes and the 2012 MRI, predates the alleged onset date by more than one year. "Medical opinions that predate the alleged onset of disability are of limited relevance." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1165 (9th Cir. 2008). Therefore, the ALJ did not err in finding Costigan's treatment notes not probative with respect to the relevant period. While the ALJ considered the results of the 2012 MRI, he properly noted the limited instances of Plaintiff reporting back pain to a treating physician during the relevant period. See AR 25. That the complete record contains more than one instance of Plaintiff reporting symptoms after the alleged onset date, as the ALJ incorrectly stated, does not negate that substantial evidence supports the physical component of the RFC. Therefore, remand is not warranted on this ground.[4] See Bayliss, 427 F.3d at 1217.

_____

[4] Plaintiff also argues that a medical expert was necessary because the evidence of Plaintiff's onset date of her back pain was "inconclusive." JS at 14. But a medical expert is not required where, as here, the ALJ finds that Plaintiff was never disabled. See Sam v. Astrue, 550 F.3d 808, 809, 811 (9th Cir. 2008).

### 3. Mental Impairment

#### a. Background

On June 18, 2014, five months after giving birth to her second child, Plaintiff reported to her obstetrician that she had been struggling with depression and experiencing mood swings, anxiety, and worry. See AR 347. On August 8, 2014, her treating psychologist noted that Plaintiff complained of postpartum depression but denied suicidal or homicidal ideations. See AR 374.

On September 22, 2014, Dr. Pramual Pinanong performed a psychiatric consultative examination. See AR 388-93. Plaintiff reported that she had become severely depressed after her daughter was born eight months earlier and experienced low energy level, poor concentration, loss of interest to outside activities, hopelessness, irritability, and social isolation. See AR 388-89. Plaintiff demonstrated hyperactive psychomotor activity, erratic eye contact, and anxious and tense movement, but also exhibited normal speech and cooperative behavior. See AR 390. Plaintiff was oriented to time, place, and purpose of the evaluation, had intact recent memory, judgment, and insight, and demonstrated intellectual functioning within the average range. See id. However, Plaintiff's immediate memory, remote memory, and concentration were slightly or mildly impaired, and abstractions were concrete. See id. Plaintiff had a depressed mood, exhibited excessive worry, and was observed as "very anxious . . . with a lot of nervous energy" but her affect was appropriate and no thought process or perceptual disturbances were noted. AR 391. Dr. Pinanong diagnosed Plaintiff with postpartum depression and found her prognosis "guarded." AR 392. Dr. Pinanong opined that Plaintiff's abilities to follow simple one- or two-step instructions and to maintain attention and concentration required to perform work-related tasks were mildly limited; and that Plaintiff's abilities to interact with others, including workers and

supervisors, and to withstand the stress of a routine workday and adapt to change were moderately limited. <u>See</u> AR 393.

After Dr. Pinanong's evaluation, a State agency reviewing psychologist found Plaintiff moderately limited in her abilities to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. <u>See</u> AR 116-17. The State agency reviewing psychologist opined that Plaintiff could maintain concentration, persistence, and pace in the context of simple tasks and limited interaction with others, and that Plaintiff required limited contact with the public and coworkers. <u>See</u> <u>id.</u> A second State agency reviewing psychologist affirmed these findings two months later. <u>See</u> AR 127, 131-32.

In November 2014, Plaintiff was involuntarily hospitalized for three days due to her psychological symptoms. <u>See</u> AR 399, 412. Plaintiff reported asking her husband for a gun, threatening her 10-month old child, and having thoughts of harming herself and her family. <u>See</u> AR 422, 438. Plaintiff presented with unstable and flat affect, mood instability, racing thoughts, rapid and pressured speech, altered thought process, poor perception, fair judgment, and fair to poor insight. <u>See</u> AR 415, 422, 438. Upon discharge, Plaintiff was diagnosed with postpartum depression, prescribed Zoloft and Risperdal, and referred for follow-up mental health treatment. <u>See</u> AR 402, 413.

Records submitted by Plaintiff to the Appeals Council show that a psychiatrist treated Plaintiff from December 2014 to May 2015. <u>See</u> AR 69-75. At her initial evaluation, Plaintiff stated, "I'm desperate, I need help," and reported symptoms of depressed mood, crying spells, anxiety, poor sleep and appetite, low energy, difficulty concentrating, loss of interest in activities, loss

of sexual desire, nightmares, obsession with cleaning, panic attacks several times a week, and thoughts of suicidal ideation at least twice a week. AR 73-74. On examination, Plaintiff exhibited restless motor activity, tense and alert facial expression, depressed and anxious mood, and fair concentration, judgment, insight, and impulse control, but was alert and oriented and showed good cooperation, appropriate affect, good recent and remote memory, and normal speech, thought process and content. See AR 74. The treating psychiatrist prescribed Zoloft and Sertraline. See AR 73, 75. At subsequent visits, Plaintiff reported that some symptoms had improved, but she continued to suffer panic attacks. See AR 70-72. In March 2015, the treating psychiatrist assessed Plaintiff as unstable and found her treatment progress satisfactory with guarded prognosis. See AR 71. In May 2015, the treating psychiatrist again assessed Plaintiff as unstable and found treatment progress unsatisfactory, noting that medication compliance had been inconsistent. See AR 70. On March 20, 2015, the treating psychiatrist opined that Plaintiff's condition was "rather severe" and that she was "still unstable and currently unfit to work at any capacity." AR 69.

Plaintiff received treatment from a psychologist between January and May 2015. See AR 77-78. On January 30, 2015, the psychologist noted that Plaintiff was "still depressed and anxious," while on May 15, 2015, Plaintiff was "less depressed and distressed." AR 78.

Later in 2015, Plaintiff became pregnant and sought prenatal care at Northeast Community Clinic. See AR 57. She reported on October 1, 2015 that she had stopped taking Zoloft two weeks earlier. See AR 60. Progress notes from October and December 2015 show that Plaintiff had symptoms of depression and anxiety and was referred for mental health treatment. See AR 56, 59. Plaintiff's chart indicated severe depression, PTSD, and anxiety. See AR 57.

On June 27, 2016, Plaintiff met with a psychotherapist. See AR 453. Plaintiff related feelings of constant fear, helplessness, and hopelessness, and paranoid thoughts about being a danger to herself and her children. See id. Plaintiff reported that her symptoms were exacerbated by her third pregnancy and her inability to find another therapist after her treating psychologist died in January 2016. See id. Plaintiff also reported having taken Zoloft under the guidance of a psychiatrist, which did not provide significant relief. See id. The psychotherapist diagnosed Plaintiff with generalized anxiety disorder (GAD) and major depression and recommended that Plaintiff continue with psychotherapy and resume taking her medications. See id.

On July 15, 2016, a different psychiatrist diagnosed Plaintiff with major depressive disorder, recurrent, severe with psychotic symptoms, GAD, and panic disorder. See AR 455. This psychiatrist prescribed Ativan, Zoloft, and Seroquel. See id.

b.    ALJ's Findings

The ALJ made two RFC findings with respect to Plaintiff's mental limitations. First, in setting forth the formal RFC assessment, the ALJ found that Plaintiff experienced serious symptoms of postpartum depression beginning in mid-2014, but that there was "no medical evidence" that these symptoms persisted after November 2014. AR 24-26. The ALJ "did not afford . . . substantial weight" to the opinions of Dr. Pinanong and the State agency psychologists because they offered their assessments unaware of the forthcoming 18-month gap in Plaintiff's treatment from November 2014 to June 2016 and of the "distinctly different diagnosis" of GAD and major depression that Plaintiff would receive in June and July 2016. AR 26-27. Alternatively, because Plaintiff appeared pro se, the ALJ then submitted interrogatories to the VE on the assumption that Plaintiff was limited to unskilled tasks, setting forth an alternative RFC assessment. See AR 29.

c.    Analysis

Plaintiff argues that the ALJ improperly discounted the opinions of Dr. Pinanong and the two State agency reviewing psychologists. See JS at 7. The Court agrees.

The records submitted to the Appeals Council directly contradict the basis given by the ALJ for discounting these opinions. These records show that Plaintiff underwent psychotherapy from January to May 2015 and took psychiatric medication from November 2014 until September 2015, after she became pregnant with her third child. See AR 60, 69-75, 77-78. Progress notes from Plaintiff's prenatal care visits in October and December 2015 indicate that Plaintiff continued to experience psychiatric symptoms during this period. See AR 56, 59.

Nor is the Court persuaded that Plaintiff's diagnosis of major depressive disorder, which followed years of psychiatric symptoms triggered by the birth of her child, represents a "distinctly different diagnosis" from postpartum depression, or contradicts these opinions in any way.[5] AR 27. Therefore, the ALJ's reasoning does not even constitute the "reference to specific evidence in the medical record" required to discount the opinions of the State agency reviewing physicians, Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998), and is certainly insufficient to discount Dr. Pinanong's opinion under both the "specific and legitimate" and "clear and convincing" standards applicable to examining physicians, Carmickle, 533 F.3d at 1164.

Although the ALJ erred in discounting these opinions, reversal is not warranted if his error was harmless. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Stout v. Comm'r, SSA, 454 F.3d 1050, 1055 (9th Cir.

---

[5] Postpartum depression "can resolve spontaneously or become chronic depression." Robert S. Porter, M.D., et al., eds., The Merck Manual 2690 (Merck Research Labs., 19th ed. 2011) ("Merck").

2006) (holding harmless errors that are "inconsequential to the ultimate nondisability determination."). The ALJ's RFC did not incorporate the limitations assessed by Dr. Pinanong and the State agency physicians—for example, the ALJ's finding that Plaintiff could frequently perform complex technical work contradicted the opinions of the State agency physicians that Plaintiff was moderately limited in her abilities to understand, remember, and carry out detailed instructions.[6] See AR 24, 116, 131.

The ALJ's error would be harmless if the alternative RFC limiting Plaintiff to unskilled work incorporated the limitations assessed by these physicians. However, the Court is unable to determine whether the alternative RFC incorporated Dr. Pinanong's opinion that Plaintiff was moderately limited in her ability to withstand the stress of a routine workday and adapt to change. See AR 393. Simply limiting Plaintiff to unskilled work did not account for this limitation. See Munoz v. Colvin, No. 15-00261, 2015 WL 5971537, at *2 (C.D. Cal. Oct. 14, 2015) (declining to find harmless error where physician assessed moderate limitations in claimant's abilities to associate with day-to-day work activity and adapt to stresses in normal work environment and ALJ limited claimant to unskilled work); see also SSR 85-15, 1985 WL 56857, at *4 ("The basic mental demands of . . . unskilled work include the abilit[y] (on a sustained basis) . . . to deal with changes in a routine work setting."). While the alternative RFC appears to include the limitations set forth in the formal RFC, it is unclear whether limiting Plaintiff to work at a stress level of 5 incorporated Dr. Pinanong's limitation with regard to stress and change. See AR 24, 29. Because the Court cannot confidently conclude

_____

[6] The Commissioner appears to concede that the mental limitations assessed in the formal RFC were not supported by substantial evidence. See JS at 11 (describing formal and alternative RFCs and arguing that alternative RFC was supported by substantial evidence).

that the ALJ's error was harmless, and because this matter is being remanded on other grounds, <u>see</u> Sections II.B and II.C <u>infra</u>, the ALJ should re-evaluate the opinions of Dr. Pinanong and the State agency reviewing physicians on remand.

**B.   Symptom Testimony**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discount her subjective symptom testimony. <u>See</u> JS at 15-17, 20. The Court agrees.

**1.   Applicable Law**

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" <u>Id.</u> at 1014-15 (quoting <u>Smolen</u>, 80 F.3d at 1281). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

**2.   Relevant Factual Background**

In a July 2014 function report, Plaintiff reported severe mood swings, irritability, constant worry, social withdrawal, nervous breakdowns, inability to perform simple tasks, and difficulty with concentration, memory, and

getting along with others. See AR 225. Plaintiff indicated that her "mental depressive disorder prevent[ed]" her from performing personal care tasks and that she needed reminders to bathe herself and her daughters and to take medicine. AR 226-27. Plaintiff also stated that she went outside only twice a week, could not go out alone due to unpredictable moods and fear of a public breakdown, and needed her husband to go shopping with her due to her lack of focus. See AR 228. Plaintiff indicated that her impairments affected her abilities regarding talking, completing tasks, understanding, concentration, following instructions, getting along with others, and memory, but did not indicate any physical limitations except that she could only walk for 5 minutes before needing to rest for 1 to 2 minutes. See AR 230. In her July 2014 disability report, Plaintiff stated that despite having thoughts of suicide, she had not sought mental health care because she lacked health insurance and could not afford to seek treatment. See AR 224. In an updated report submitted in October 2014, Plaintiff indicated that she needed assistance to complete tasks that required physical exertion or prolonged sitting, standing, or walking. See AR 263. In December 2014, Plaintiff reported "difficulty managing the regular demands of daily life" and "little tolerance for stress," and that she required assistance from others to maintain appointments and to complete basic "daily functioning" tasks for herself and her children. AR 277.

At the hearing, Plaintiff testified that she stopped working on December 26, 2013, while pregnant with her daughter, because her doctor never cleared her to return to work. See AR 97. Plaintiff testified that she felt sadness and paranoia, isolated herself due to anxiety, became irritable easily, was indecisive, and could not get along with others, focus, or concentrate. See id. Plaintiff also reported back pain. See AR 99. Plaintiff stated that she was not able to prepare food, care for the children, or do routine housework all the

time, and that her husband had hired two helpers to come in every other day to assist her because she could not "do it on [her] own." AR 98.

The ALJ did not afford "full weight" to Plaintiff's symptom testimony and found that the medical evidence did not demonstrate the alleged intensity, persistence and limiting effects of Plaintiff's symptoms. AR 27. The ALJ also cited a "sporadic and inconsistent" treatment record. Id. The ALJ reasoned that Plaintiff had given birth to two children during the relevant period, which was "not necessarily consistent with an individual who has been diagnosed with ongoing postpartum depression, who claims that her related symptoms are both profound and debilitating." Id. Finally, the ALJ found Plaintiff's testimony inconsistent with David's testimony. See id. While Plaintiff testified that she could not take care of herself or her family alone, causing her husband to hire helpers, David did not mention helpers and testified that Plaintiff experiences obsessive compulsive disorder symptoms and did chores compulsively. See id.

### 3. Analysis

As an initial matter, the Commissioner concedes that the ALJ erred in discounting Plaintiff's symptom testimony due to Plaintiff's limited mental health treatment and having children during the relevant period. See JS at 17.

The ALJ also erred in finding Plaintiff's testimony inconsistent with her husband's statements. The lack of testimony from David about Plaintiff receiving assistance with housework and childcare is unsurprising, given that David was present when Plaintiff testified about the helpers, and the ALJ did not raise the subject in examining David. See AR 82-106. That Plaintiff did not offer that she "relentlessly" does laundry or washes dishes, as David stated, also fails to demonstrate any inconsistency. AR 103. Plaintiff stated in July 2014 that she could do laundry and dishes but that it took her 30 to 55 minutes to complete each task due to lack of focus. See AR 227. Although Plaintiff

testified that she could not do routine housework "all the time" and that helpers assisted her, she never stated that she was completely unable to wash dishes or do laundry. AR 98. While Plaintiff's symptom testimony did not include precisely the same details that David offered, the Court finds no "inherent inconsistency" between their statements. AR 27. Accordingly, this was not a clear and convincing reason for the ALJ to discount Plaintiff's testimony.

The ALJ correctly observed that Plaintiff received minimal treatment for her physical impairment during the relevant period. See supra Section II.B.1.c. While a limited course of treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment, see Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), Plaintiff's limited treatment for her back impairment did not permit the ALJ to discount Plaintiff's testimony about her psychological symptoms, which comprised the vast majority of her complaints, see Jones v. Colvin, No. 14-03091, 2015 WL 1565498, at *5 (E.D. Wash. Apr. 8, 2015) ("The fact that Plaintiff did not seek treatment for her physical pain is largely immaterial to her credibility regarding her mental impairments."); cf. Strawn v. Berryhill, No. 16-3249, 2017 WL 3393403, at *7 (D. Ariz. Aug. 8, 2017) (holding that claimant's positive response to mental health treatment "only serve[d] to discount" his complaints of psychological symptoms and that because "most of plaintiff's pain and symptom statements had to do with limitations flowing from his physical impairments, this reason provides inadequate support for the ALJ's overall adverse credibility finding"). The record also reflects that Plaintiff's lack of insurance prevented her from seeking medical care throughout the relevant period. See AR 98 (Plaintiff testifying that she had been unable to find a new mental health provider with no insurance); 224 (Plaintiff indicating that she had not sought care because she lacked health insurance and could not afford treatment); 301 (Plaintiff

reporting that she could not afford to see her medical providers and did not qualify for Medi-Cal); 389 (Plaintiff reporting that she stopped psychotherapy because she was unable to afford treatment). A limited course of treatment "is not a proper basis for reject the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." Carmickle, 533 F.3d at 1162; see also Trevizo v. Berryhill, 871 F.3d 664, 680-81 (9th Cir. 2017) (finding inability to afford treatment or lack of insurance are valid reasons for not seeking greater treatment). Thus, the ALJ impermissibly discounted Plaintiff's testimony on this basis.

The ALJ's only remaining reason for discounting Plaintiff's symptom testimony was the absence of medical evidence corroborating her complaints. See AR 27. On its own, this reason is insufficient to discount a claimant's subjective symptom testimony. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (holding that the ALJ "may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence"). Because the ALJ's other reasons fail, the alleged lack of corroborating medical evidence does not suffice to discount Plaintiff's subjective symptom testimony. Accordingly, remand is warranted.

## C.    Third-Party Testimony and Function Report

### 1.    Applicable Law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout, 454 F.3d at 1053); see also 20 C.F.R. § 404.1513(d) (statements from spouses, parents, other relatives, and friends can be used to show severity of impairments and effect on ability to work). When rejecting the testimony of a lay witness, an ALJ must give specific reasons germane to that witness. See Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009).

## 2.    Relevant Factual Background

In a July 2014 function report, David reported that Plaintiff was prone to breakdowns, "uncomfortable with anyone outside of close family," and could not go out alone. AR 236, 239. David described Plaintiff as "very doldrum," unenthusiastic, unmotivated, and angry. AR 237. Although Plaintiff neglected personal care and needed reminders to shower and take vitamins, she cared for their children. See AR 237-38, 240. Plaintiff's household chores were generally limited to laundry and dishes, and Plaintiff "clean[ed] dishes constantly," sometimes washing clean dishes. AR 238, 242. David also reported that Plaintiff had difficulty with lifting, walking, talking, hearing, completing tasks, concentrating, understanding, following instructions, getting along with others, and memory, and could only walk for 15 minutes at a time. See AR 241.

At the hearing, David testified that Plaintiff had acted "fairly irrational[ly]" since 2013 and was easily irritable, angry, upset, and constantly frustrated with him. AR 102. David stated that Plaintiff sometimes neglected to eat, brush her teeth, or take a shower, and had difficulty listening to instructions and paying attention. See AR 102, 104. Remarking that he was not a psychologist, David testified that Plaintiff was "OCD [i.e., exhibiting symptoms of obsessive-compulsive disorder] about cleaning dishes" and would clean dishes and laundry "relentlessly." AR 102-03.

The ALJ found that David's third-party function report and testimony did not "significantly further[] the merit of [Plaintiff's] application." AR 28. The ALJ reasoned that David's reports of Plaintiff's "significant and ongoing psychiatric symptoms" were "not entirely consistent with the sporadic and inconsistent nature of [Plaintiff's] treatment. Id. The ALJ noted that "neither [Plaintiff] nor her psychiatric sources" corroborated David's reports of Plaintiff's obsessive-compulsive symptoms. Id. Finally, the ALJ found David's

testimony inconsistent with Plaintiff's testimony because he did not state that he had hired helpers to assist Plaintiff with housework and childcare. <u>See</u> <u>id.</u>

### 3. Analysis

The ALJ failed to provide germane reasons for discounting David's testimony and report. As above, the Commissioner concedes that the ALJ erred in discounting David's statements on the basis of Plaintiff's limited mental health treatment. <u>See</u> JS at 23 (incorporating arguments about the ALJ's reasons for discounting Plaintiff's subjective symptom testimony).

As previously explained, David's failure to mention helpers in his testimony and Plaintiff's failure to discuss compulsively performing chores in her own testimony do not evidence inconsistency. <u>See</u> <u>supra</u> Section II.C.3. Additionally, Plaintiff reported an obsession with cleaning, among other symptoms of her mental impairment, during a December 2014 psychiatric evaluation. <u>See</u> AR 73. Furthermore, two medical professionals diagnosed Plaintiff with GAD. <u>See</u> AR 453, 455. GAD is characterized by excessive anxiety and worry, including worries about chores. <u>See</u> <u>Merck</u> at 1495. Accordingly, the Court cannot conclude that David's statements, which offered no medical diagnosis, conflicted with the medical evidence or with Plaintiff's testimony.

Because the ALJ did not provide any germane reasons for discounting David's statements, remand is warranted on this ground.

## D. Remand Is Warranted

A remand is appropriate where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. <u>See</u> <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1115-16 (9th Cir. 2003). Here, the Court finds that remand is the appropriate remedy to allow the ALJ to reconsider the opinions of Dr.

Pinanong and the two State agency psychologists regarding Plaintiff's mental impairments, Plaintiff's testimony, and David's function report and testimony, and to conduct such other proceedings as are warranted.

## III.   CONCLUSION

For the reasons stated above, the conclusion of the Social Security Commissioner is reversed and the action is remanded for further proceedings.


Date: June 7, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge